Price, J.
At the January term of the court of common pleas of Franklin county for the year 1909, the grand jury presented an indictment against defendant in error, Edward Whitten, charging him with pocket-picking in violation of Section 6818; Revised Statutes, especially the latter *177 part of the section. He plead not guilty to the indictment and the case was tried to a jury. The indictment alleges that the offense was committed on or about the 28th day of September, 1908, in said county, the victim being John W. Inks. Some of the material facts disclosed on the trial tend to show that at the date of the alleged crime, John W. Inks, the prosecuting witness and owner of the watch taken, resided at Fredericktown, Knox county, Ohio. Fie had at least two friends, one residing at that town, and another who resided in Indiana, but for some purpose was temporarily at Fredericktown.
There was a Saturday night train on the 'C., A. & C. railroad which stopped at Mt. Vernon on its way to Columbus. These parties took some conveyance from Fredericktown to Mt. Vernon, and there boarded the train to Columbus, all desiring to see and know the capital city on Sunday, and they arrived there at an early hour of that day. They visited many places and saw many, to them, interesting sights. Some of these places were breweries, and others were no less attractive.
Inks had heard of the German Village (a suburb of “Greater Columbus,” we presume), and to sate his curiosity, he, with the others, repaired to' the enchanted precincts of this village, where they arrived Sunday evening about seven or eight o’clock. He there saw the accused, who was engaged as a dispenser of beer and other beverages to visitors of the place, and he was also something of an. overseer, of the. delectable *178 grounds. It seems probable that he dispensed some to Inks, who was then .in. the possession of his watch.
In due course of time the soporific effect of frequent libations, or the surcharged ambient atmosphere of the village, brought on a desire for slumber, and being obsessed by the feeling, Inks sought to and did recline on one of the benches of the village, and there became oblivious until about two o’clock of the following morning. He then had no watch to tell him the time of day. He straightway proclaimed his loss, and also informed the chief of police and requested that due search be made for his missing property. In a few days a policeman detailed for the duty, called at the office of a pawnbroker on South High street, Columbus, and the business man of that place exhibited a watch, which answered the description given. Engraved on the inside were the words: “John W. Inks, from Mother, 1907. ”s
The pawnbroker, as required, had recorded the description of the watch,' and a brief description of the man who had presented it, and to this record the accused, Whitten, had signed the name, “John W. Inks,” instead of his own name. He had obtained five dollars on the watch and gone his way. A short time after the above discovery, the policeman met the accused on the street and communicated what he had found out, and accused went with «the officer to the pawnshop and admitted that he had put the watch in pawn, but claimed he had bought it from another person and did not take it from the person of Inks. On the *179 trial he testified to the same effect. There were other inculpatory facts and circumstances adduced at the trial which tended to establish his guilt. These facts and circumstances led to his indictment and were in evidence at the trial.
During its progress some questions were raised on the introduction of testimony, but as none of them are urged in this court, we pass them by. The accused requested that several instructions be given the jury. Some of these were given in substance, and others were not so given. Among these special charges only one now seems important, inasmuch as the circuit court found error in refusing to give it, for which error it reversed the judgment of the court of common pleas and-remanded the cause for further proceedings.
The following is the charge refused: “You may find the defendant not guilty of the offense charged, but guilty of petit larceny.” Did the trial court err in refusing to so charge? We must look to the indictment and the statute under which it is found in order to answer the question. Omitting the caption, the following is a copy of the indictment: “That Edward M. Whitten, late of said county, on or about the 28th day of September, in the year of our Lord one thousand nine hundred and eight, within the county of Franklin aforesaid, in and upon one John W. Inks, then and there being, unlawfully did make an assault and then and there one certain hunting case gold filled watch of the value of twenty dollars ($20) of the personal property of the said John W. Inks, from the person and against the will of the said *180 John W. Inks, unlawfully, without force and violence, and without putting him, the said John W. Inks, in fear, did steal, take, and carry away, with intent then and there the personal' property aforesaid unlawfully to steal, contrary to the statute in such cases,” etc.
A brief consideration of the statute will assist in determining whether the charge should have been given. The statute is Section 6818, Revised Statutes, especially the latter part thereof. The whole section reads: “Whoever by force or violence, or by putting in fear, steals and takes from the person of another anything of value, is guilty of robbery, and shall be imprisoned in-the penitentiary not more than fifteen years and not less than one year, and whoever otherwise than by force and violence, or by putting in fear, shall steal and take from the person of another anything of value, shall be deemed guilty of pocket-picking, and shall he imprisoned in the penitentiary, not exceeding five years nor less than one year.”
This section is in Chapter 3 of Title I of the crimes act, which is entitled “Crimes against the person;” while larceny is defined by Section 6856, Revised Statutes, which is part of Chapter 4 of Title I, entitled “Crimes against property.” The act of pocket-picking is classed as an offense against the person — larceny of the person, as it is called in Section 575 of McClain on Criminal Law. As this author so speaks of this subject, the entire section is now in point. “To constitute larceny from the person, the property must have been under the protection of the person. The fact *181 that the one from whom the property is taken is asleep does not prevent larceny being from the person. To constitute -this offense it is not essential that any violence be used, or fraud. The taking the property from the hand is enough, even if there is no resistance. The offense is thus in some cases distinguished from robbery. To constitute larceny from the person, the article must be completely removed from the person and all connection with the person severed. The offense is sometimes described by statutes so as to involve the idea of a secret taking without the owner’s knowledge. The offense of stealing from the person is an independent substantive offense distinct from that of larceny, and as such must be charged and proven, and as usually defined, it is a felony without regard to the value of the property stolen. The allegations of the indictment must show not merely larceny, but the taking from the person by some of the means specified in the statute. * * *' The offense being distinct from that of larceny, it is not necessary to allege the felonious stealing, taking and carrying away as required in the common law indictment for larceny, but it will be sufficient to charge the act as described in the statute.”
Some of the doctrine of the foregoing section is found in Harris v. The State, 57 Ohio St., 92, where this court held: “A verdict rendered upon the trial of a valid indictment for pocket-picking, which finds the defendant guilty of pocket-picking in manner and form- as charged in the indictment, is sufficient to sustain judgment and sentence,' *182 although such verdict does not find and return the value of the property taken.”
The statute supporting the indictment in the present case does not require the indictment to allege, or the evidence to establish' any particular value of the property taken, as is necessary in making out a case of larceny, although the property taken must be of some value. Under a charge of larceny it becomes necessary to prove the value of the property taken, and likewise necessary that the jury find the value and state it in the verdict. This is required by Section 7315, Revised Statutes, which provides that, “When an indictment charges an offense against property by larceny, embezzlement, or obtaining by false pretenses, the jury, on conviction, shall ascertain and declare in the verdict the value.of the property stolen, embezzled, or falsely obtained.”
Moreover, this course of practice is required in order to measure the penaltv in cases of larceny, for Section 6856, Revised Statutes, provides that, “Whoever steals anything of value is guilty of larceny, and shall, if the value of the thing stolen is thirty-five dollars or more, be imprisoned in the penitentiary not more than seven years nor less' than one year, or, if the value is less than that sum, be fined, not more than two hundred dollars, or imprisoned not more than thirty days or both.” Therefore, in such case, the verdict must find the value to enable the court to administer the appropriate penalty.
It is argued for this special charge, that stealing or larceny is an element in the crime of pocket- *183 picking, and an offense of a lesser grade, meriting less severe penalty. The first part of the proposition may be true, but the element of stealing is in many other distinct offenses, such as robbery and burglary. See Sections 574 and 575, McClain on Criminal Law. But this furnishes no sufficient justification for the request in the present case, if the charge in the indictment is an offense distinct f'rom and independent of the crime of larceny, and we find that it is so independent and different in-character. The second part of the proposition that the grade‘of punishment for larceny may be less than that for pocket-picking, is of no force here because of the weakness of the request itself and the condition of the evidence.
If the accused desired the jury to have the liberty to' find him guilty of petit larceny rather than pocket-picking, the request should have asked the court to direct the jury to find the value of the property stolen, so the court might know whether the offense was grand or petit larceny. No such request was made or contained in the instruction asked. We have just seen that on the charge made in the indictment the "jury need not find and return the value of the property. Harris v. State, supra. Besides all this, there is no evidence in the record as to the value of the watch taken, except the opinion of the accused. . The state introduced none upon the subject, and the accused did not venture to do so except to elicit the opinion of the defendant that it was worth eight or ten dollars. It is true that the indictment lays the value of the watch at twenty dollars, but in pleading the *184 general issue of not guilty, value is denied, and there was no proof on the subject except as stated.
Notwithstanding the allegation of value in the indictment, had the state desired and been able to do so, we think of no rule to prevent proof that •the watch was of greater value, even exceeding thirty-five dollars, which, if returned in the verdict, might have subjected the accused to longer imprisonment than is prescribed for pocket-picking. Hence the scope of the penalty is not the same in the two cases.
But we need not reason further on the subject, for the character' of the case and. of the evidence could not admit of such an instruction. We go back to the position that pocket-picking is a crime independent of and' distinct from larcenyj and intended to be made so by the statute. Section 6818, supra, until 1883, defined, the crime of robbery only, but .on March 5, 1883, the legislature amended the section by adding thereto the definition of the crime of pocket-picking, which is also a crime against the person. See 80 O. L., 38. There seemed to be a call for a provision to cover a ground between robbery and larceny. There grew in numbers and activity a class of gentry with velvet fingers, who, without committing acts of violence, so preyed upon the innocent and unsuspecting by their skill in manipulation, that the lawmakers endeavored to provide a remedy, and they have done so. They did not make a hew offense, so much as they declared the acts named to be an offense to be punished as there prescribed. The act'then'became a distinct crime.
*185 We are of opinion the court did not err in refusing the special charge requested. The. trial corift carefully instructed' the jury on every feature of the case, so they could correctly apply the law to the facts established by the evidence.
From these considerations it follows that the circuit court erred in reversing the judgment of the court of common pleas, and the judgment of the former is reversed and that of the latter affirmed.

Judgment reversed.

Summers, C. J.; Spear, Davis and Shauck, JJ-, concur.